United States Court of Appeals
Fifth Circuit

**F I L E D**

**November 11, 2003**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

No. 02-21201

CONTINENTAL INSURANCE COMPANY,

Plaintiff-Counter Defendant-Appellant

versus

J. RAY MCDERMOTT, INC.,

Defendant-Counter Claimant-Appellee-
Third Party Plaintiff-Appellant,

CROWLEY MARINE SERVICES, INC.,

Third Party Defendant-Appellee.

Appeals from the United States District Court for
the Southern District of Texas
(USDC No. H-099-CV-3251)

Before REAVLEY, JONES and CLEMENT, Circuit Judges.

REAVLEY, Circuit Judge:*

---

*Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

We reverse and render judgment in favor of Continental Insurance Co. (Continental), for the following reasons:

1. Section 6 of the hull policy states that "no party shall be deemed an additional assured . . . to any extent greater than required by the agreement entered into between such party and the Assured." The reference to "the agreement" is a reference to the charter party between J. Ray McDermott, Inc. (McDermott) and Crowley Marine Services, Inc. (Crowley) (the assured).

2. "[C]harter party agreements are essentially contracts and they are subject to the general rules of contract law." Marine Overseas Servs., Inc. v. Crossocean Shipping Co., 791 F.2d 1227, 1234 (5th Cir. 1986). "When interpreting unambiguous provisions of a time charter, the charter party should be read as a whole, and a court may not look beyond the written language of the charter to determine the intent of the parties." Wilson v. JOB, Inc., 958 F.2d 653, 657 (5th Cir. 1992). Generally, "[i]nterpretation of a contract and the determination of ambiguity are questions of law, which this Court reviews de novo." FDIC v. McFarland, 33 F.3d 532, 539 (5th Cir. 1994). "This broad standard of review includes the initial determination of whether the contract is ambiguous." American Totalisator Co. v. Fair Grounds Corp., 3 F.3d 810, 813 (5th Cir. 1993).

3. Construing the charter party as a whole, we do not read it to provide that Crowley was required to obtain hull insurance, covering damage caused by cargo operations and naming McDermott as an additional assured with respect to such

coverage. On the contrary, we construe the agreement as placing responsibility for such losses and insuring against such losses on McDermott.

4. As we read the charter party, section 7 sets out certain responsibilities of Crowley, the owner, section 8 sets out certain responsibilities of McDermott, the charterer, and section 9 requires these parties to obtain insurance corresponding to their spheres of responsibility set out in sections 7 and 8. For example, section 7(b) makes the owner liable for the injury to or death of the owner's employees, and section 9(a) correspondingly requires the owner to obtain "insurance coverage for the employees of Owner (if any) for illness, injury or death to the full extent required by the laws applicable thereto." Section 9(d), especially when read in context, further appears to require each party under sections 7 and 8 to obtain insurance covering its respective responsibilities and liabilities. Section 9(d) states: "It is the intent of the parties to cover by insurance the risks of loss of and damage to the Barge, other vessels, structures, objects and Cargoes on board the Barge, as well as the liabilities assumed by each under Section 7 and 8, respectively."

5. Applying this same linkage between responsibilities and insurance to McDermott, we note that section 8(d) imposes liability on the charterer for injury to or death of the charterer's employees, and section 9(b) correspondingly requires the charterer to obtain "[i]nsurance coverage for the employees of Charterer (if any) for illness, injury or death to the full extent required by the laws applicable thereto."

3

6.  As to cargo operations, section 8 places the responsibility and liability on McDermott.  Section 8(a) provides that the charterer shall pay all "expenses of loading and unloading Cargoes [and] delivery of Cargoes."  Section 8(b) provides that "[t]he charterer shall arrange and, if necessary, contract for any ballast engineers, towage, pilotage or like service . . . including . . . loading . . . discharging or launching Cargoes at its expense . . . and shall be solely liable for any loss or damage resulting from actions or omissions related to such services . . . ."  Section 8(d) provides:

> Unless such loss or damage results from the gross negligence or willful misconduct of the Owner, or the Owner's failure to exercise due diligence to deliver and maintain the Barge in a seaworthy condition, the Charterer shall indemnify and hold the Owner harmless from and against the following: . . . (ii) all loss of or damage to Cargoes, howsoever caused, or for damage caused by the Cargoes . . . (v) all liability for loss of or damage to the Barge . . . occurring during the loading and/or discharging of the Barge . . . .

Corresponding to these responsibilities concerning cargo and cargo operations, in our view, is the requirement of section 9(b) that the charterer obtain "[f]ull form Protection and Indemnity insurance" and  "[a]ll-risk insurance for the full actual value of any and all Cargoes," as well as a commercial general liability policy of at least $10 million.

7.  We believe that the only plausible interpretation of sections 7, 8 and 9, read together, is that (1) McDermott was responsible under section 8 for handling cargo and for the damages to the barge caused by the handling of such cargo, and (2) McDermott was responsible under section 9 for obtaining insurance corresponding to these respective responsibilities and liabilities assigned in section 8.  Accordingly, under section 6 of the

4

hull policy, McDermott was not required to be named as an additional assured under the hull policy purchased by Crowley with respect to coverage for damage caused by the handling of cargo. Because of this section 6 exclusion, McDermott was not an additional assured under Crowley's hull policy issued by Continental.

8. While we agree with McDermott that a contractual duty to obtain insurance does not necessarily correspond to the assignment of liabilities and other obligations of the contracting parties, we believe that in this case the charter party, read as a whole, linked the charterer's cargo handling responsibilities set out in section 8 with the obligations to purchase insurance in section 9.

9. The issue regarding who, as between Continental and Crowley, is responsible for the $50,000 deductible is now moot since the deductible only becomes relevant if Continental is required to cover the accident.

10. Our construction of the charter party also necessarily leads us to hold that there is no merit to the claim asserted in McDermott's third party complaint that Crowley breached the charter party by failing to procure the proper hull insurance. There is no reason for a remand for further proceedings on this claim. As discussed above, the agreement provides that each party shall purchase insurance, and nothing in the charter party requires the hull policy purchased by the owner to cover damage caused by the handling of cargo and to name McDermott as an additional assured on such coverage. On the contrary, section 8(d) quoted above states the opposite—that McDermott shall hold Crowley harmless for all damage to the barge occurring during the handling of

5

cargo—and for the reasons discussed above McDermott was responsible for purchasing insurance covering damage to cargo or barge caused by cargo operations. Further, section 9(d) states that "[i]t is the intent of the parties to cover by insurance the risks of loss of and damage to the Barge . . . and to look solely to such insurance for the recovery of any loss, damage, liability and expense recoverable thereunder."

11. Accordingly, the judgment is reversed and judgment is hereby entered that Continental is not liable to McDermott under the hull policy. A take nothing judgment is also hereby entered on the third party claim.

REVERSED AND RENDERED.